## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:07-CV-729-RPM

DUANE ROBERTSON,

      **Plaintiff,**

v.

THE AVATAR GROUP, INC., an Ohio corporation;
INTELLINETICS, INC., an Ohio corporation;
A. MICHAEL CHRETIEN, individually;
MATTHEW L. CHRETIEN, individually,

      **Defendants.**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

Plaintiff Duane Robertson, by and through his counsel, Shughart Thomson & Kilroy, P.C., hereby responds in opposition to Defendants' Motion to Transfer Venue and states as follows:

## I.  INTRODUCTION

Defendants' Motion to Transfer Venue should be denied because this Court has proper venue over all persons and claims made by Plaintiff Duane Robertson against Defendants The Avatar Group ("Avatar"); Intellinetics, Inc. ("Intellinetics"); A. Michael Chretien ("Michael Chretien"); and Matthew L. Chretien ("Matthew Chretien"), (collectively "Defendants") in this case.  Nor is discretionary transfer warranted.

In December 1996, Mr. Robertson entered into a Patent Purchase and Royalty Agreement ("Purchase Agreement") with Avatar, Michael Chretien, and Matthew Chretien to sell a "Three-State Virtual Volume System for Managing Document Storage to Permanent Media," bearing United States Patent No. 5,408,630 ("Patent").  [Complaint, Ex. A.]  The Purchase Agreement provides a scale by which Avatar shall pay Royalty Payments to Robertson.  [Complaint, Ex. A, ¶ 2(a).]  The parties agreed that these payments would be made monthly.  [Complaint, Ex. A, ¶ 3.]   As security for the terms of the Patent purchase, Avatar executed a separate Security Agreement.  [Complaint, Ex. B.]  The Security Agreement provides that, upon default, including Avatar's failure to pay Robertson in accordance with the terms of the Agreement, Robertson can reclaim the Patent.  [Complaint, Ex. B, ¶ C(2).]  The performance by Avatar under the terms of the Purchase Agreement and Security Agreement is guaranteed personally, jointly and severally, by Michael and Matthew Chretien.  [Complaint, Ex. A, ¶ 9.]

Separately from the Purchase Agreement and Security Agreement, although incidental to the relationship between the parties arising from these agreements, Matthew Chretien, signing on behalf of the stated borrower, Intellinetics, executed a $100,000 Promissory Note in favor of Robertson on October 25, 2000.  [Complaint, Ex. C.]  The terms of the Promissory Note, written on Avatar letterhead, states that Intellinetics promises to pay Robertson $105,666.66 plus interest from October 27, 2000, in the amount of 8.5% per annum.  Intellinetics has assumed the right to use the Patent from Avatar, and has been or is using the Patent for its own purposes.  As of this date, the Defendants have failed to pay Robertson the amounts owed under the terms of the Purchase Agreement and Security Agreement, as well as under the terms of the Promissory Note. Mr. Robertson filed a complaint alleging three claims for breach of contract and a request for an accounting.

Intellinetics helps companies implement an electronic document management platform. According to it's website, "electronic document management offers an opportunity to establish an intelligent framework that integrates documents and their content with their purpose and value to an organization. As a result, users are empowered to make better decisions, faster and in new ways." It is in this regard that the Patent, the "Three-State Virtual Volume System for Managing Document Storage to Permanent Media," becomes integral to Intellinetics' business.

Mr. Robertson is, and has been at all times during the relationship with the Defendants, a resident of Colorado. Moreover, the Patent in question was created here in Colorado and the inventor of the Patent, an officer and employee of Intellinetics, still resides in Colorado. Mr. Robertson was operating the Patent under the name of Intellinetics in Colorado when he first met the Defendants. The Defendants were contracting to use and install the Patent on computers in Ohio under the Avatar business name. Right after the time Mr. Robertson decided to shut down his business, Matthew and Michael Chretien approached Mr. Robertson to purchase both the Patent and the Intellinetics name. After lengthy discussion, Mr. Robertson agreed to sell the Patent and Intellinetics name.

This case was initially filed in the District Court of Jefferson County, Colorado, on March 9, 2007. On April 9, 2007, Defendants removed the case to this Court, based upon diversity jurisdiction. The Defendants' followed with their Motion to Transfer Venue to the Southern District of Ohio, on April 16, 2007. The Defendants allege that venue is improper in this Court under Title 28, United States Code, Section 1391(a), and, in the alternative, that this venue is inconvenient for the Defendants, pursuant to Title 28, United States Code, Section 1404(a).

## II.  VENUE IS PROPER IN THIS COURT

The Defendants argue, pursuant to Title 28, United States Code, Section 1406(a), that venue is not proper in this Court and thus the Court should transfer the matter to an appropriate district.  The Defendants allege that venue is improper in this Court under Title 28, United States Code, Sections 1391(a), which states:

> "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated..."

The Defendants reason that, because all Defendants reside in Ohio and "virtually all" of the events or omissions giving rise to the Plaintiff's claims occurred in Ohio, that venue is improper in Colorado.   However, the Defendants' allegation that virtually all events and omissions occurred in Ohio is unfounded.

The general rule is that a defendant's removal of an action from state court to federal court waives or cures any objection to improper venue in the federal court.  *Knight Oil Tools, Inc. v. Unit Petroleum Co.*, 2005 WL 2313715, *2 (D.N.M. 2005) (not reported); 17 J. Moore, *Moore's Federal Practice* ¶ 111.36[5][a], at 111-79 (3d ed. 2004).  Courts will often utilize the same analysis used in the "minimum contacts" test for jurisdictional considerations in determining where the events or omissions occurred giving rise to a plaintiff's claims.  *Furr v. Aguilar*, 2005 WL 1801627 *5 (D.Colo. 2005) (not reported).  The minimum contacts standard can be met either by showing specific or general jurisdiction.  *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).  Since there is no allegation that the Defendants have continuous and systematic contacts with Colorado, the Plaintiff must show that specific jurisdiction exists over the Defendants.  Specific jurisdiction exists when a "defendant has purposefully directed his activities at residents of the forum, and the litigation results from

alleged injuries that arise out of or relate to those activities." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir. 1998) (internal quotations omitted). Moreover, the Court can assess whether the Defendants had such minimum contacts with Colorado so that they could have reasonably anticipated being haled into Court here. *Id*. at 1091. That test is easily met here.

When a party breaches a contract, purposefully entered into with a known resident of Colorado, he should reasonably anticipate that a lawsuit could ensue in Colorado. There is no allegation that Mr. Robertson's residence has come as a surprise to any of the Defendants in this matter. The Defendants approached Mr. Robertson with the request to purchase the Patent. Mr. Robertson did not seek out the Defendants in order to sell the Patent. Moreoever, two out of three material documents in this matter have chosen Colorado law to apply to any potential disputes.[1] Therefore, the Defendants were keenly aware that Colorado would be the most likely forum if Mr. Robertson were to file suit against them. Minimum contacts exist between the Defendants and Colorado and venue is proper in this Court.

The Defendants have contacted and reaffirmed their indebtedness to Mr. Robertson relatively consistently throughout the past ten years. In April 1999, Michael Chretien sent a letter to Mr. Robertson on behalf of Intellinetics asking to modify the Patent Purchase Agreement. [April 1999 Letter, Ex. 1.] In September 2000, Matthew Chretien faxed Mr. Robertson a request for $300,000 to provide Intellinetics operating capital. [September 2000

---

[1] Defendants assert that there are four material documents, splitting the difference between choice of law in Colorado and Ohio, 2-2. However, the two documents that began this relationship, the Patent Purchase Agreement and the attendant Security Agreement, chose Colorado law. The third document, the later executed promissory note with an Ohio choice of law provision, was tangential to the earlier relationship. The fourth document referenced by the Defendants was a nondisclosure agreement signed only after Mr. Robertson began questioning why he had not been repaid any monies by the Defendants. Certainly at this point, the Defendants were aware that litigation would ensue should they fail to pay Mr. Robertson in full, thus adding the Ohio choice of law provision for the Defendants' convenience at the expense of Mr. Robertson.

Facsimile, Ex. 2.]  In October 2002, Michael Chretien sent Mr. Robertson a letter stating that Mr. Robertson's patience was appreciated while the business of Intellinetics struggled with economic progress.   [October 2002 Letter, Ex. 3.]   Attached to this letter was a proposed payment schedule.  In December 2003, Michael Chretien sent Mr. Robertson another letter with a status report and newly revised payment schedule.  [December 2003 Letter, Ex. 4.]  By December 2006, Mr. Robertson requested an accounting and sent a representative to Ohio to review the Defendants' books.  The Defendants submitted a revised purchase agreement on January 6, 2007, in which they confirm that the visit by Mr. Robertson's representative was a "catalyst" needed to resolve the outstanding debt.  [January 2007 Revised Purchase Agreement, Ex. 5.]  Furthermore, every income statement the Defendants have prepared during these ten years has contained the liability owed to Mr. Robertson on the balance sheet.  This was not a requirement made by Mr. Robertson, but was a clear admission on the Defendants' part that this liability was known, expected, and constant.

Moreover, the Defendants fail to explain their position that most of the acts or omissions took place in Ohio.  Just as the decisions by the Defendants not to pay the Plaintiff may have taken place in Ohio, the failure to pay the Plaintiff took place here in Colorado.  Courts have found that the mere payment of funds to the resident's offices within the forum constitutes part performance by the nonresident, thus making venue proper in the jurisdiction where payment was received.  *Continental American Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1312 (10th Cir. 1982).  In *Plus System, Inc.*, the defendant made monthly payments to the plaintiff under a contract.  The Tenth Circuit held that "[p]ayments made in the forum state are evidence that some performance was rendered in the forum state" thus linking minimum contacts to ultimate issues of venue.  *Plus System, Inc. v. New England Network, Inc.,* 804 F.Supp. 111, 118 (D.Colo. 1992) (citing *Continental American Corp.*, 692 F.2d at 1312; *Cleverock Energy Corp.*

*v. Trepel*, 609 F.2d 1358, 1364 (10th Cir. 1979)); *see also Enyart v. Orr*, 78 Colo. 6, 10 (Colo. 1925) (stating that venue is proper in the place in which payment is received, the court stated "[i]t [is] the duty of the debtor to seek the creditor, and to make payment at the place of the latter's residence.") (citing *People ex rel. v. District Court*, 70 Colo. 540 (Colo. 1922)); *Walter Brewing Co. v. Hoder*, 230 P.2d 170, 173 (Colo. 1951) (holding that actions are proper in the venue in which the creditor resides).  Mr. Robertson and his bank accounts are located in Colorado.  Any payments made on the contracts would be mailed to or wire transferred to Colorado.  Therefore, at least one-half of the acts or omissions giving rise to Mr. Robertson's suit occurred here in Colorado.  Thus, venue is proper in Colorado under Title 28, United States Code, Section 1391(a)(2).[2]

Finally, if the Plaintiff's selected state has "substantial" contacts with the Defendants, it makes no difference whether another state may have equal or more substantial contacts.  *Rusty Eck Ford-Mercury Corp. of Leavenworth v. American Custom Coachworks, LTD*, 184 F.Supp.2d 1138, 1145 (D.Kan. 2002); *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994).  Though Ohio may also have significant contacts to this case, it does not negate the fact that Colorado also has substantial contacts with the Defendants and is a proper venue for this matter.

### III.  PLAINTIFF'S CHOICE OF VENUE MERITS DEFERENCE

Recognizing that their primary argument is insufficient, the Defendants alternatively raise discretionary transfer.  There too, the Defendant's arguments fail, as they ignore the Plaintiff's preference in choosing venue.

---

[2]  There is no disagreement that all Defendants reside in Ohio, as required under Title 28, United States Code, Section 1391(a)(1).  However, Sections 1391(a)(1) and (2) are alternative grounds for venue. *Wise v. Lindamood*, 89 F.Supp.2d 1187, 1197-98 (D.Colo. 1999).  Simply because the Defendants all reside in Ohio, Colorado remains an equally proper venue for this suit.

The Defendants allege that venue in Colorado is inconvenient under Title 28, United States Code, Section 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   In exercising its discretion to transfer a matter under Section 1404(a), a court may consider 1) a plaintiff's choice of forum; 2) accessibility of witnesses and evidence; 3) cost of making the necessary proof; 4) enforceability of a judgment; 5) advantages and obstacles to a fair trial; 6) congested dockets; 7) conflicts of laws; 8) advantages of a local court applying local law; and 9) all other practical considerations ensuring an easy, expeditious, and economical trial.  *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 1415, 1417 (10th Cir. 1967).  Of the nine factors listed above, the one that always accorded the greatest weight is the Plaintiff's choice of venue.[3]  When the balance of the remaining factors are not strongly in favor of the Defendants, the Plaintiff's choice of forum should not be disturbed. *William A. Smith Contracting Co., Inc. v. Travelers Indem. Co.*,  467 F.2d 662, 664 (10th Cir. 1972).   The Defendants have failed to prove that Colorado is an inconvenient forum.[4]   The Plaintiff brought this suit in Colorado and his choice of venue should stand.

In particular, the Defendants argue that Ohio would be a better forum because all of the Defendants, six out of seven defense witnesses, and all the Defendants' books and records are located in Ohio, and transporting these people and documents to Colorado would be burdensome and expensive.  However, the standard is not whether the witnesses reside in Ohio, but whether

---

[3]  The plaintiff's choice of a proper forum is entitled to great weight, and will not be lightly disturbed, especially where the plaintiff is a resident of the judicial district in which the suit is brought. *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 927 (W.D. Mo. 1985).

[4] The Defendants remind the Court more than once in their Motion that the Plaintiff did not seek any money from the Defendants for five-years.  The Defendants seem to be implying that this factor some how weighs in favor of moving this dispute to Ohio.  It is unclear how the Defendants reached such a conclusion and no case law supports their theory.  Mr. Robertson's kindness in deferring litigation in hopes that the Defendants would eventually make good on their promises cannot be inferred as his resignation to litigate in Ohio.  And no good deed going unpunished should not be a basis for transfer.

they would be accessible in Colorado.  The Defendants have made no allegation that these witnesses would be unavailable unless the dispute was resolved in Ohio.  Furthermore, the Defendants fail to mention that the inventor of the Patent, and one of their officers, resides in Colorado.

The evidentiary burden will arise long before trial.  Any documents necessary for litigation will be disclosed in discovery, prior to the time of trial.  Whether this litigation occurs in Ohio or Colorado, the Plaintiff and his counsel still reside in Colorado and, thus, the documents would have to be transported to Colorado, and the expense incurred, sooner or later. Moreover, with modern electronic communications and digital discovery, document production is not burdensome across state lines.  Furthermore, the expense of defending a lawsuit is but one factor to consider.  In this case, two of the Defendants are corporations and the other two are corporate officers.  It strains logic to believe that corporations are overburdened by litigation in any place other than their home state.  Finally, if the trial was transferred to Ohio, it would not dissolve this financial burden but simply shift it to the Plaintiff.

The Defendants state that they could receive a fair trial in Ohio.  But that is not the standard.  *Texas Gulf Sulphur* asks whether there is any impediment to a fair trial in Colorado. There is no allegation that the Defendants cannot receive a fair trial in Colorado.  Likewise, the Defendants state that the courts in Ohio are no more congested than the courts in Colorado.  This argument does not weigh in favor of transferring venue to Ohio.  The Defendants also assert a make-weight argument that Plaintiff's counsel is admitted to practice in the Sixth Circuit, which supposedly supports the Defendants' position that Ohio is a more convenient forum.  Although counsel for the Defendants resides and is admitted to practice in Colorado, the admission of one party's counsel is irrelevant to questions of venue.  The Defendants also assert that a judgment from a federal court would be more easily enforceable in Ohio on Ohio Defendants.  This is

simply incorrect.  Article IV, Section 1 of the United States Constitution provides that there will be comity between the states and that each state will give "full faith and credit" to the court rulings of any other state.  The Plaintiff understands that he will have to file judgment in Ohio, but is willing to do so.  The burden of the judgment, then, rests solely on the Plaintiff and should not affect the Defendants in the least.  This ministerial act is not a meaningful point in the dispute over venue.  Finally, the Defendants argue that two of the material documents require the application of Colorado law and the common law respecting contracts is virtually the same in both Ohio and Colorado.  Again, these facts do not show that Ohio is a better venue than Colorado.

The Defendants' arguments simply demonstrate that Ohio is a "good" venue and would be less expensive for the Defendants and their witnesses.  However, the Defendants have not met their burden of proving that Colorado is an inconvenient forum under the strictures of Section 1404(a).  Therefore, the Defendants' Motion to Transfer Venue in this matter should be denied.

## IV.  CONCLUSION

Venue is proper in the United States District Court for the District of Colorado.  The Defendants have failed to show that Colorado is an inconvenient forum in which to litigate this dispute.  Therefore, we respectfully request that the Court deny the Defendants' Motion to Transfer Venue.

**DATED**: May 7, 2007.

SHUGHART THOMSON & KILROY, P.C.
*Pursuant to C.R.C.P. 121 § 1-26, this document was E-Filed and/or E-Served via CourtLink, and a duly signed copy is on file and available for inspection at the offices of undersigned counsel.*


/s/ Philip W. Bledsoe
Philip W. Bledsoe, No. 33606
Nicole A. Westbrook, No. 34310
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document, **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** was filed electronically, on the 7th day of May, 2007, with notice of same being sent via electronic notification by the Court, to:

Randolph S. Dement
7720 E. Belleview Ave., Suite 350
Greenwood Village, Colorado  80111

ATTORNEY FOR DEFENDANTS


/s/ Arlene Richerson
ARLENE RICHERSON