**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-cv-00729-RPM

DUANE ROBERTSON,

      Plaintiff,

v.

THE AVATAR GROUP, INC., an Ohio corporation;
INTELLINETICS, INC., an Ohio corporation;
A. MICHAEL CHRETIEN, individually; and
MATTHEW L. CHRETIEN,

      Defendants.

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to D.C.COLO. LCivR 56.1 and Fed. R. Civ. P. 56(b), Defendants The Avatar Group, Inc. ("Avatar"), Intellinetics, Inc. ("Intellinetics"), A. Michael Chretien ("Mike Chretien"), and Matthew L. Chretien ("Matt Chretien") request that the Court enter partial summary judgment in their favor and against Plaintiff Duane Robertson ("Robertson") with respect to the first, second, and third claims for relief asserted in the Complaint (Doc. 1-2). As grounds, the Defendants state:

**I. INTRODUCTION**

This action arises out of Robertson's sale of a patent to Avatar in 1996, which patent is known as a "Three-State Virtual Volume System for Managing Document Storage to Permanent Media" ("Patent"). Robertson contends that Avatar breached a Patent Purchase and Royalty Agreement ("Agreement") and related Security Agreement ("Security Agreement") by failing to pay royalties, and that Intellinetics assumed the right to use the Patent and breached the

1

Agreement and Security Agreement by failing to pay royalties. (Doc. 1-2 at pp. 3-4, Compl. at First Claim for Relief). He further contends that both Chretiens are liable for the corporations' breaches of contract as guarantors under the Agreement. (Doc. 1-2 at pp. 4-5, Compl. at Second Claim for Relief). He also seeks an accounting from all Defendants of sales involving the Patent and royalties due on such sales. (Doc. 1-2 at p. 5, Compl. at Third Claim for Relief).[1]

Various facts form the basis for this request for partial summary judgment on the first, second, and third claims for relief. The Patent and Patent Rights that Avatar purchased from Robertson have not been utilized since at least February 1998 and the technology utilized thereafter by Avatar and Intellinetics is not a modification, improvement, or continuation of the Patent or Patent Rights.[2] Intellinetics is not liable for the alleged debt of Avatar under the Agreement and Security Agreement as Intellinetics is not a contracting party and it did not assume the right to use the Patent or Patent Rights. Robertson declared a default of all Defendants in April 1999 and his claims are barred by the statute of limitations. The Chretiens are not liable as guarantors because their liability rises and falls with that of Avatar. An accounting was conducted by Robertson to his satisfaction so that claim is moot. (Doc. 20, Am. Ans. at pp. 1-4; Doc. 17, Sched. Ord. at pp. 2-3).

## II. STATEMENT OF MATERIAL FACTS

The following facts are material to resolution of this action and are undisputed.

**A. PARTIES AND JURISDICTION**

1. Robertson is a resident of Colorado. (Doc. 17, Sched. Ord. at p. 3, §4).

---

[1] Robertson has also sued Intellinetics (but not the other Defendants) for breach of a promissory note executed by Intellinetics in 2000. (Doc. 1-2 at pp. 5-6, Fourth Claim for Relief). He alleges that the promissory note arose separately from the Agreement and Security Agreement. (Doc. 1-2 at p. 3, ¶13). Intellinetics is not seeking summary judgment with respect to the fourth claim for relief.

[2] Robertson represented that he owned the Patent when sold to Avatar but such ownership has not been demonstrated in this action.

2

2. Avatar is an Ohio corporation with its principal place of business in Ohio. (Doc. 11-2, Mike Chretien Affidavit at ¶5).

3. Intellinetics is an Ohio corporation with its principal place of business in Ohio. (Doc. 17, Sched. Ord. at p. 3, §4; Doc. 11-2, Mike Chretien Aff. at ¶8).

4. Mike Chretien resides in Ohio and is an officer and director of Avatar and Intellinetics. (Doc. 17, Sched. Ord. at p. 3, §4; Doc. 11-2, Mike Chretien Aff. at ¶¶3-4, 7).

5. Matt Chretien resides in Ohio and is an officer and director of Avatar and Intellinetics. (Doc. 17, Sched. Ord. at p. 3, §4; Doc. 11-2, Mike Chretien Aff. at ¶¶3-4, 7).

6. Subject matter jurisdiction is founded on diversity of citizenship. (Doc. 17, Sched. Ord. at pp. 1-2, §2).

**B.  TRANSACTIONS AT ISSUE**

7. The document storage software system referenced in the Patent was invented by Thomas D. Moss ("Moss") and he wrote the source code. The Patent was issued on April 18, 1995 to a Colorado corporation known as III G.I. Ltd. (Ex. A-1, Moss Affidavit at ¶¶2-3; Ex. A-2, Robertson Depo. at p. 37 ll. 7-18 and at p. 55 ll. 20-24; Ex. A-5, Depo. Ex. 16 at p.1).

8. A document entitled "Unanimous Consent of Shareholders" was prepared to effect a sale of the Patent from III G.I. Ltd. to Robertson effective as of June 27, 1996. (Ex.A-2, Robertson Depo. at p. 65 ll. 6-17 and at p. 66 l. 24-p.67 l. 2; Ex. A-6, Depo. Ex. 26).

9. The Unanimous Consent provided by Robertson (through discovery in this case) is not signed by the shareholders of III G.I. Ltd. although he believes it was signed. (Ex. A-2, Robertson Depo. at p. 66 ll. 17-23; Ex. A-6, Depo. Ex. 26 at p.3). The Unanimous Consent states that because of the lack of interest in the Patent, III G.I. Ltd. sold the Patent to Robertson for $20,000. (Ex. A-2, Robertson Depo. at p. 70 ll. 6-25; Depo. Ex. 26).

3

10.     Moss was a shareholder of III G.I. Ltd. when it sold the Patent to Robertson. The Patent constituted all or substantially all of the property of the company and the sale to Robertson was not in the usual and regular course of the company's business. Moss was not given notice of the sale nor was he given an opportunity to vote on the sale. The first time he saw the unsigned Unanimous Consent provided by Robertson was during his deposition in this lawsuit. Moss did not sign the Unanimous Consent and to his knowledge it was not presented to or signed by the other shareholders of III G.I. Ltd. To his knowledge, the sale was not approved by a majority of the company's shareholders as required by its Articles of Incorporation. (Ex. A-1, Moss Affidavit at ¶¶3-9).

11.     Despite inquiry from Defendants' counsel, Robertson has not provided a signed copy of the Unanimous Consent upon which he based his claim of ownership of the Patent. (Ex. A-7, e-mail to Robertson's counsel).

12.     On November 27, 1996, five months after the purported Patent sale from III G.I. Ltd. to Robertson, a UCC Statement was filed with the Colorado Secretary of State showing III G.I. Ltd. as the debtor and Robertson as the secured party. The description of collateral included the Patent Rights referenced in the Agreement. Robertson could not explain how III G.I. Ltd. could grant a security interest in the Patent Rights if it did not own them. (Ex. A-2, Robertson Depo. at p. 71 l. 8-p. 72 l. 12; Ex. A-8, Depo. Ex. 27).

13.     Robertson and Avatar entered into the Agreement on December 19, 1996. (Doc. 17, Sched. Ord. at p. 3, §4). The Agreement states that Robertson was the owner of the Patent and had the right to transfer the Patent Rights, which are defined as the Patent and document imaging rights and inventions in connection with the Patent or described in the Patent. (Doc. 1-3, Agreement at p.1, first whereas and ¶1).

4

14. The Agreement states that Avatar would pay certain royalties to Robertson based upon Avatar's gross revenues from sales and services of software products or services utilizing the Patent Rights or any modifications, improvements or continuations thereof. The royalty payments were to be made by Avatar on a monthly basis. (Doc. 1-3, Agreement at p.1, ¶¶2(a)-(b) and at p.2, ¶3).

15. The Agreement states that in the event of any default by Avatar in the payment of royalties to Robertson or any other obligations thereunder, Robertson had the right to take possession of the Patent and Patent Rights. (Doc. 1-3, Agreement at p.3, ¶6).

16. The Chretiens signed the Agreement as guarantors, by which they guaranteed the performance of Avatar's obligations under the Agreement and the related Security Agreement. (Doc. 1-3, Agreement at p.4, ¶9; Doc. 17, Sched. Ord. at p.3, §4).

17. The Agreement states that it would be governed and construed in accordance with Colorado law and could not be modified except in writing signed by the parties. (Doc. 1-3, Agreement at p.4, ¶13).

18. Avatar executed the Security Agreement on December 19, 1996 in Robertson's favor. (Doc. 1-3 at p.5, Security Agreement; Doc. 17, Sched. Ord. at p.3, §4). The Security Agreement granted Robertson a security interest in the Patent and Patent Rights that were the subject of the Agreement. (Doc. 1-3 at p. 5, Security Agreement at ¶(A)).

19. The Security Agreement states that in the event of any default by Avatar under the Agreement or Security Agreement, Robertson had the right to repossess and sell the Patent and Patent Rights. (Doc. 1-3 at p.6, Security Agreement at ¶(C) 2).

20. The Security Agreement states that it would be governed by and construed in accordance with Colorado law. (Doc. 1-3 at p. 6, Security Agreement at ¶(D) 3).

21.     Moss, the inventor of III G.I. Ltd's patented software technology, has been employed as a software engineer first by Avatar and then by Intellinetics continually since 1997. He designed and developed the software utilized by Intellinetics and previously by Avatar, and he wrote all the source codes for their software versions.  Since at least February 10, 1998, Avatar and Intellinetics have not utilized the patented technology referenced in the Patent, they have not utilized the Patent Rights referenced in the Agreement, and they have not utilized any modification, continuation, or improvement of the Patent or Patent Rights.  (Ex. A-1, Moss Affidavit at ¶¶10-11).

22.     The fact of non-utilization referenced in paragraph 21 above is supported by two expert opinions provided by the Defendants through their Rule 26 (a)(2) Expert Disclosures. (Ex. A-9).  Robertson has not rebutted or otherwise contradicted these disclosures through the service of his own expert disclosures.

23.     Robertson received one royalty payment and no other payment or monthly payment called for by the Agreement.  The royalty payment from Avatar to Robertson was for approximately $35,000 and was made in November 1998.  (Ex. A-2, Robertson Depo. at p. 79 l. 5- p. 80 l. 3; Ex. A-3, Mike Chretien Depo. at p. 27 ll. 9-15 and at p. 62 ll. 10-23; Ex. A-4, Matt Chretien Depo. at p. 53 ll. 11-20).

24.     Robertson acknowledged that Avatar was in default under the Agreement as of April 23, 1999.  Indeed, Robertson declared that as of April 23, 1999 there was a total default by all of the Defendants under the Agreement and Security Agreement.  (Ex. A-2, Robertson Depo. at p. 86 ll. 1-17 and at p. 88 ll. 8-23; Ex. A-10, Depo. Ex. 30).

25.     Despite the defaults under the Agreement and Security Agreement, Robertson did not take steps to repossess the Patent and Patent Rights or otherwise re-take possession and title to such collateral.  (Ex. A-2, Robertson Depo. at p. 80 ll. 10-25 and at p. 82 ll. 9-18).

26. Avatar became a wholly owned subsidiary of Intellinetics in 2001. (Ex. A-4, Matt Chretien Depo. at p. 34 ll. 8-12 and at p. 43 ll. 13-21).

27. In December 2006 Robertson sent his agent John Crist to the Defendants' office in Ohio to audit their books and records to determine if royalties were due under the Agreement. (Doc. 11-2, Mike Chretien Affidavit at ¶16; Ex. A-2, Robertson Depo. at p. 19 ll. 5-8 and at p. 20 ll. 13-24).

28. Robertson has acknowledged that as a result of his agent's audit of the Defendants' books and records in December 2006, he received the accounting that he seeks in his Complaint. (Ex. A-2, Robertson Depo. at p. 95 l. 12-p. 98 l. 1).

29. The Complaint in this action was filed in Jefferson County District Court on March 9, 2007. (Doc. 1, Notice of Removal at ¶1; Doc. 1-2, Complaint). The filing therefore occurred almost eight (8) years after the April 23, 1999 default declared by Robertson.

### III. ARGUMENT

**A. STANDARDS FOR DECISION**

Summary judgment should be rendered when the pleadings, discovery and disclosure materials, and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To defeat a properly supported motion for summary judgment, there must be evidence on which a jury could reasonably find for the non-movant. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied,* 516 U.S. 1160 (1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The Defendants submit that, even viewing the evidence favorably to Robertson, a trial is unnecessary on the first, second, and third claims for relief and the entry of summary judgment is appropriate on those claims.

**B. STATUTE OF LIMITATIONS**

Courts look with favor upon statutes of limitation and construe them liberally. *Chuchuru v. Chutchurru,* 185 F. 2d 62, 64 (10th Cir. 1950). In a diversity case involving a claim for royalty payments under a contract regarding sales related to a patent, the Tenth Circuit found that the District Court was correct in applying Colorado's three-year statute of limitations for contract actions appearing in C.R.S. §13-80-101 (1)(a). *Grant v. Pharmacia & Upjohn Co.,* 314 F.3d 488, 493 (10th Cir. 2002) (also finding that the District Court was correct in concluding that the statute of limitations barred the plaintiffs' action). In such a case, the District Court should apply the discovery rule appearing in C.R.S. §13-80-108 (6), namely that a cause of action for breach of contract accrues on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence. *Id.,* 314 F.3d at 493.[3]

The Defendants have asserted the statute of limitations as an affirmative defense to the first and second claims for relief. (Doc. 20, Amended Answer at p.4). Robertson has acknowledged that all of the Defendants were in default under the Agreement and Security Agreement as of April 23, 1999. The letter to which Robertson testified by deposition declares:

> "My agreement to this cap amount is in no way a waiver of my rights under the purchase agreement, of which you know Avatar is currently in default. I would like Avatar to cure its defaults under that agreement and to thereafter remain in compliance. I will continue to reserve my rights to exercise all remedies as a result of any existing and future defaults by Avatar thereunder."

(Ex.A-10, Depo. Ex. 30). Upon inquiry into his recollection of the matters stated in the letter, Robertson testified:

---

[3] The Tenth Circuit also found in an unpublished decision that it is appropriate to apply the six-year statute of limitations appearing in C.R.S. §13-80-103.5 (1)(a) to a claim for royalty payments under a license agreement for computer software. *Auto-Trol Technology Corp. v. J. Fox, Inc.,* 24 Fed. Appx. 986, 2002 WL 27291 (10th Cir. No. 00-1412, Jan. 10, 2002). The Court there applied the discovery rules appearing in C.R.S. §13-80-108 (3) to (6), stating that under those rules the statute of limitations starts running when a party discovers, or should have discovered through the exercise of reasonable diligence, the breach of contract giving rise to the claim.

> Q      All right.  In this indented paragraph, it states, My agreement to this cap amount is in no way a waiver of my rights under the purchase agreement of which, as you know, Avatar is currently in default.  Do you see that?
>
> A      Um-hum.  Yes.
>
> Q      Did you make an agreement as to a cap amount?
>
> A      I don't remember making any agreement like that.
>
> Q      All right.  Is it true that Avatar was currently in default under the patent purchase agreement as of April 23, 1999?
>
> A      I – they – well, I don't remember – I don't recall how long the agreement was for, but if it's after the agreement then they were in default yeah.
>
> Q      And would that default also include Mike Chretien and Matt Chretien?
>
> A      Yes.
>
> Q      And also would it include Intellinetics, Inc.?
>
> A      Yes.
>
> Q      So there was a total default by all of the defendants in this case as of April 23, 1999?
>
> A      Yes.

(Ex. A-2, Robertson Depo. at p. 87 l. 23-p. 88 l. 23).

After declaring the default as of April 23, 1999, Robertson took no steps to collect from the Defendants and he took no steps to repossess or re-take the collateral, i.e., the Patent and Patent Rights.  He did send an agent to Ohio in December 2006 to audit the Defendants' books and records, but that was years after the statute of limitations expired.  Defendants submit that the three-year statute of limitations in C.R.S. §13-80-101 (1)(a) applies to the first and second claims for relief.  Under that statute, the claims should have been filed by April 23, 2002.  Alternatively, should the Court apply the six-year statute of limitations in C.R.S. §13-80-103.5

9

(1)(a), the claims should have been filed by April 23, 2005.  Robertson's first and second claims for relief, filed in court on March 9, 2007, are time-barred under either statute of limitations.

### C. INTELLINETICS LIABILITY

Defendants have denied Robertson's allegation that Intellinetics assumed the right to use the Patent from Avatar, and has been or is using the Patent for its own purposes. (Doc. 1-2, Compl. at p. 3, ¶¶14-15).  This allegation by Robertson forms the basis for his first claim for relief, in which he alleges that Intellinetics breached the Agreement and Security Agreement. (Doc. 1-2, Compl. at pp. 3-4, ¶¶17-21).  Defendants have denied that Intellinetics is liable on the claim. (Doc. 20, Am. Answer at p. 3, ¶¶17-21).

The Agreement and Security Agreement were executed by and between Robertson and Avatar.  Intellinetics is not a party to either agreement.  As of February 10, 1998, the Patent and Patent Rights covered by the Agreement and Security Agreement were no longer being utilized.  Avatar did not become a wholly-owned subsidiary of Intellinetics until 2001.  Under the circumstances, Intellinetics could not have "assumed the right to use the Patent from Avatar" nor could it be "using the Patent for its own purposes."  The Patent and Patent Rights simply have not been "used" since February 1998.  Summary judgment for Intellinetics is appropriate.

### D. CHRETIEN GUARANTEES

Unless otherwise agreed, a guarantor's liability is generally coextensive with that of the principal.  *Continental Nat'l. Bank v. Dolan,* 39 Colo. App. 16, 564 P.2d 955, 957 (1977).  There is nothing in the Agreement extending the Chretiens' guaranty beyond Avatar's liability.

Robertson alleges in his second claim for relief that Mike Chretien and Matt Chretien are liable for breach of contract by failing to honor Avatar's obligations under the Agreement and Security Agreement. (Doc. 1-2, Compl. at pp. 4, ¶¶23-27).  Defendants deny the Chretiens are so liable. (Doc. 20, Am. Answer at p. 3, ¶¶23-27).

Pursuant to the Agreement, the Chretiens guaranteed the performance of Avatar's obligations under the Agreement and Security Agreement. (Doc. 1-3, at p. 4, ¶9). It follows that if Avatar has no obligations under the Agreement, the Chretiens do not either. Given that Robertson's claims against Avatar are barred by the statute of limitations, the claim against the Chretiens is as well.

**E. MOOT ACCOUNTING CLAIM**

An accounting issue is especially suited to disposition by summary judgment. *U.S. v Immordino*, 534 F.2d 1378, 1383 (10th Cir. 1976). Summary judgment is appropriate where an accounting has been provided to an opposing party and he has had discovery of the other's files. *Id.,* 534 F.2d at 1383.

The Defendants have asserted that Robertson already conducted the accounting he seeks in the third claim for relief. (Doc. 20, Am. Answer at p. 3, ¶31). Robertson acknowledged in his deposition that the accounting was conducted through his agent John Crist:

> Q      Paragraph 31 of the complaint, in summary, alleges that in order to assess amounts owed to you under the patent purchase agreement, you need an accounting from the defendants, right?
>
> A      Well, that's what John did. Yeah.
>
> Q      Excuse me?
>
> A      That's what John did. He went out and got…
>
> Q      So the accounting's already been done?
>
> A      Well to the best of my knowledge, that's what John done when he went out there.
>
> Q      All right. What information, aside from what Mr. Crist has done for you so far, do you need from the defendants in order to conduct this accounting?
>
>         [Objection]

11

>   Q      Independently of any discussions you've had with your attorney, what information do you need in order to conduct this accounting?
>
>   [Objection]
>
>   Q      Do you know of anything independently of what your counsel has told you?
>
>   A      No, I don't know of anything independently other than what information John has compiled.
>
>   Q      What information do you, Duane Robertson, need to assess the amount owed under the patent purchase agreement that you do not already have?
>
>   [Objection]
>
>   Q      Okay.  I don't want you to tell me anything that you and Mr. Bledsoe have discussed and I'm not trying to ask that.  Independently of what you two have discussed.
>
>   A      I – to the best of my knowledge, John has got all the information that we need.  I can't tell you anything more than that.

(Ex. A-2, Robertson Depo. at p. 95 l. 12-p. 98 l. 1).  After this action was filed, the Defendants also provided Robertson with disclosures, supplemental disclosures, expert disclosures, and deposition testimony.

An accounting has been provided to Robertson and he "got all the information that we need." The third claim for relief is therefore moot and summary judgment on the claim is appropriate.

**F.  LACK OF PATENT OWNERSHIP**

A sale of all or substantially all of a corporation's property, other than in the usual and regular course of business, must be approved by a majority of the shareholders.  C.R.S. §7-112-102 (1) and (6) (formerly C.R.S. §7-5-112 before the 1993 recodification of the Colorado Business Corporation Act).  A sale of corporate property without shareholder consent or any

12

shareholders meeting, and without their knowledge, constitutes a violation of this statute. *People v. Cameron*, 197 Colo. 330, 595 P.2d 677, 678 (1979) (decided under former §7-5-112).

The Defendants have asserted that they are without knowledge or information sufficient to form a belief as to the truth of Robertson's claim of ownership of the Patent when he sold it to Avatar. (Doc. 20, Am. Answer at p. 2, ¶8-10). He claimed ownership through the purported sale from III G.I. Ltd. Through discovery in this case, Robertson provided an unsigned Unanimous Consent of Shareholders allegedly effecting the sale. However, according to Moss, a III G.I. Ltd. shareholder, the sale was not approved or even voted on by the shareholders, nor was there any other statutory compliance with respect to the sale. (§ II *infra,* S.M.F. at ¶10).

Defendants submit that a Colorado corporation such as III G.I. Ltd. could not validly convey all or substantially all of its property to Robertson unless its shareholders approved the transaction in a manner that complied with C.R.S. §7-112-102 (1) and (6). Proof of such compliance is absent in this case. The purported ownership of the Patent by Robertson formed the basis for the Agreement and Security Agreement, which in turn form the basis for Robertson's first, second, and third claims for relief. Summary judgment is appropriate on those claims due to Robertson's lack of ownership of the Patent sold to Avatar.

### IV.  CONCLUSION

Summary judgment is designed to avoid needless trials. There is no genuine issue as to the material facts supporting the motion, and the law favors a judgment for the Defendants. Under the circumstances, a jury could not reasonably find for Robertson on the first, second, and third claims for relief. Defendants request that the Court grant this motion and enter partial summary judgment in their favor and against Robertson on those claims for relief.

Dated this 31st day of January, 2008.

                                            Respectfully submitted,


                                            s/ Randolph S. Dement
                                            Randolph S. Dement
                                            7720 E. Belleview Avenue, Suite 350
                                            Greenwood Village, Colorado  80111
                                            Telephone:  303-721-7271
                                            Facsimile:  303-779-6006
                                            E-mail:  rdement@dementlaw.com
                                            Attorney for Defendants

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 31st, 2008, I electronically filed the foregoing **MOTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address: Philip W. Bledsoe (pbledsoe@stklaw.com); and I hereby certify that I have served the document to the following non-CM/ECF participant in the manner indicated by the non-participant's name:

Nicole A. Westbrook (mail)
Shughart Thomson & Kilroy, P.C.
1050 Seventeenth Street, Suite 2300
Denver, Colorado  80265

      s/ Randolph S. Dement
      Randolph S. Dement
      7720 E. Belleview Ave., Suite 350
      Greenwood Village, Colorado  80111
      Telephone:  303-721-7271
      Facsimile:  303-779-6006
      E-mail:  rdement@dementlaw.com
      Attorney for Defendants