IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00729-RPM

DUANE ROBERTSON,

Plaintiff,

v.

THE AVATAR GROUP, INC., an Ohio corporation;
INTELLINETICS, INC., an Ohio corporation;
A. MICHAEL CHRETIEN, individually; and
MATTHEW L. CHRETIEN,

Defendants.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

Plaintiff, Duane Robertson, by and through his counsel, Shughart Thomson & Kilroy, P.C., hereby responds to Defendants' motion for partial summary judgment as to the First, Second, and Third Claims for relief as follows:

**INTRODUCTION**

Both A. Michael and Matthew L. Chretien acknowledged in their depositions that they presently owe money to Mr. Robertson based upon both of the written agreements that exist between the parties to this matter. In fact, the Defendants have affirmed their debt under the Patent Purchase and Royalty Agreement to Mr. Robertson repeatedly over the past ten years. Despite this repeated clear and unequivocal pattern of promising to Plaintiff that they would pay their debts, the Defendants now say, in essence, that the Plaintiff should not have believed them and sought enforcement of his contract earlier.

2229114.1

Both individual Defendants, on behalf of themselves and their companies, have made statements to Mr. Robertson calculated to delay him from retrieving his Patent or requesting payment under the terms of the agreements between the parties. The Defendants, having encouraged and fostered that delay, have in the meanwhile benefited from the use of the Patent and are now merely seeking a windfall. The Defendants' brief actually highlights the existing disputes as to the material facts and inferences present in this matter. The Defendants' motion for partial summary judgment should be denied in its entirety.

## FACTS

The following paragraphs address the "statement of material facts" as enumerated by the Defendants in their motion for partial summary judgment.

<u>Parties and Jurisdiction</u>

1. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

2. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

3. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

4. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

5. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

6. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

<u>Transactions at Issue</u>

7. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

8. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

9. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

10. Mr. Robertson disputes the factual assertions made by the Defendants in this paragraph. Mr. Robertson further states that Mr. Moss's recollection of events is not trustworthy and

Mr. Moss's knowledge of the signatures of other shareholders is not material.  *See supra* p. 10.

11. For purposes of this motion, Mr. Robertson agrees to the extent that he has not provided a signed copy of the unanimous consent form to the Defendants in discovery.  However, Mr. Robertson disputes that his sole claim to ownership of the Patent is based upon this consent form.  *See supra* p. 9.

12. Mr. Robertson disputes the factual assertions made by the Defendants and the insinuation that a record keeping error would destroy his rightful ownership of the Patent.

13. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

14. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

15. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement to the extent that one possible remedy for Mr. Robertson upon the Defendants' default was to reclaim the Patent.

16. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

17. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

18. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement only to the extent that the Security Agreement was a personal security by Matt and Mike Chretien in favor of Mr. Robertson to back and support the Patent Purchase and Royalty Agreement.

19. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement only to the extent that repossession of the Patent was and is one remedy for Mr. Robertson upon the default of the Defendants.

20. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

21. Mr. Robertson disputes the factual recitation by the Defendants. A jury will be responsible for determining when the Patent ceased to be used to the benefit of the Defendants. *See supra* pp. 7-8.

22. Mr. Robertson disputes the factual recitation by the Defendants.

23. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

24. Mr. Robertson disputes the factual recitation by the Defendants. Mr. Robertson has never affirmatively declared default under the Patent Purchase and Royalty Agreement and has been seduced by the Defendants' repeated promises to pay to allow old debts to continue and accrue. *See supra* pp. 5-8.

25. Mr. Robertson disputes the factual recitation by the Defendants.

26. Mr. Robertson does not have adequate information to dispute or not dispute this assertion.

27. For purposes of this motion, Mr. Robertson does not dispute the Defendants' statement.

28. Mr. Robertson disputes the factual recitation by the Defendants.

29. Mr. Robertson disputes the factual recitation by the Defendants as Mr. Robertson has never declared default in this matter. *See supra* pp. 5-8.

## ARGUMENT

*Summary Judgment Standard*

Summary judgment should be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Turman v. Castle Law Firm, LLC*, 129 P.3d 1103, 1105 (2006). Material facts are those that may affect the outcome of the case. *In re Cress*, 106 B.R. 246, 247 (B.R. D. Kan. 1988). The moving party bears the initial burden of establishing that there are no material facts in dispute, and then the burden shifts to the

nonmoving party to establish that there is a triable issue of fact. *Caribou Properties, Inc. v. Manatee Design Group, Inc*., 2005 WL 2972983, *1 (D.Colo. 2005) (not reported).

The Defendants move for partial summary judgment based upon four principal grounds: 1) statute of limitations; 2) lack of Patent ownership; 3) lack of any Intellinetics liability; and 4) a complete accounting that renders the claim for accounting moot. Each ground highlights facts in dispute between the parties and renders their motion untenable.

*Statute of Limitations*

The Defendants assert that they should not be accountable for fulfilling their established and acknowledged contractual responsibilities because once they failed to pay, the clock began to toll. But that is not a correct statement of fact nor an accurate statement of the law. The Defendants claim that on April 23, 1999, Mr. Robertson declared default and the three- or six-year statute of limitations should have started running on that date. [Def. Mot. p. 9.] But that is not what the referenced letter says. And, the Defendants fail to address the plethora of competing facts showing the Defendants' continual promises and negotiations to pay Mr. Robertson within the not-so-distant past. These negotiations and promises were made in an effort to prevent Mr. Robertson from declaring default, reclaiming the Patent, or requiring payment from the Defendants. The Defendants should not be permitted to delay payment in this matter based upon their assurances and promises and then avoid payment completely based upon their own actions.

The efforts of the Defendants to renegotiate the amounts owed to Mr. Robertson have remained steady since the original agreement was signed. By Mike Chretien's own documentation, the Defendants first attempt to renegotiate the Patent Purchase Agreement was in December 1998. [Pl. Ex. 2.] On April 16, 1999, the Defendants requested that all liability to

Mr. Robertson be capped at $750,000. [Pl. Ex. 3.] In February 2001, the Defendants asked Mr. Robertson to subordinate his interest in Intellinetics and Mr. Robertson declined. [Pl. Ex. 2.] By the end of 2001, Mr. Robertson remained vigilant, calling the Defendants and requesting new payment schedules. [Pl. Ex. 2.] In October 2002, the Defendants sent a letter attaching yet another revised payment plan. [Pl. Ex. 4.] During the year of 2003, the Defendants explained their difficult financial situation to Mr. Robertson and promised to provide him "additional details" on when they could "meet [their] schedule." [Pl. Ex. 2.] All along the way, the Defendants remained positive in their ability to eventually repay Mr. Robertson. In December 2003, on Intellinetics stationary, Mike Chretien sent a letter to Mr. Robertson attaching a new revised payment schedule. [Pl. Ex. 5.] By the Defendants' own assertions, then, their characterization of an aside in an April 1999 letter is a woefully incomplete portrait of years of ongoing negotiations between the Defendants and Mr. Robertson. [Def. Mot. p. 9.] The clear topic of the letter referenced by the Defendants was the negotiation of payment terms under the agreement, not to declare a final default. [Def. Ex. A-10.] It actually begins by stating, "My agreement to cap amount is in no way a waiver of my rights," and continues to say, "I would like Avatar to cure its defaults and to thereafter remain in compliance." [Def. Ex. A-10.] Certainly, the letter contemplates a future and ongoing business relationship with the Defendants based upon the Patent Purchase Agreement. In addition, by the terms of the contract itself, no "delay in exercising ... any right, power or privilege hereunder ... shall operate as a waiver." [Complaint, Ex. A.]

"Under certain circumstances, a new promise to pay a debt, an unqualified acknowledgment of a debt from which a promise to pay may be implied, or a part payment of a debt will start the limitations period running anew." *Drake v. Tyner*, 914 P.2d 519, 522

2229114.1                                      6

(Colo.App. 1996) (citing *Berthoud v. Dunn*, 762 P.2d 759 (Colo.App. 1988)).  "A new promise to pay is created by a clear and unqualified acknowledgment of the debt." *Adams v. Tucker*, 40 P. 783, 784-85 (Colo.App. 1895).  Furthermore, "an implied promise is created by a clear, explicit and unequivocal acknowledgment of the debt."  *Miller v. Kinsel*, 78 P. 1075, 1075-76 (Colo.App. 1904).  "The efficiency of a payment to avert the effect of the statute rests in the conscious and voluntary act of the defendant, explainable only as a recognition and confession of the existing liability."  *Ferris v. Curtis*, 127 P. 236, 238 (Colo. 1912).

The Defendants entered into the Patent Purchase and Royalty Agreement with Mr. Robertson December 19, 1996.  [Complaint, Ex. A.]  Although the Defendants never began payments to Mr. Robertson for the Patent, they assured Mr. Robertson that money would be forthcoming.  In 2000, the Defendants approached Mr. Robertson for a $300,000 loan.  The loan was requested in order to continue the business of Avatar and Intellinetics.  Mr. Robertson agreed to loan the Defendants $100,000 in an effort to keep the Defendants afloat so that he could eventually be repaid on the Patent Purchase and Royalty Agreement.  [Complaint, Ex. C.] At the time the Defendants requested and accepted the loan from Mr. Robertson, there was no indication that they were not using the Patent or that they never intended to repay Mr. Robertson the debt owed.  [Pl. Ex. 1.]  The appropriate inference to draw from Mr. Robertson's action of advancing $100,000 to the Defendants' businesses is that Mr. Robertson hoped his cash contribution would facilitate the eventual repayment of the considerable sum owed from the Patent sale.  Stated another way, it would be inappropriate to infer that Mr. Robertson, by loaning $100,000 to the Defendants, was merely pumping more money into people he believed would never pay him under the first two agreements.

Furthermore, even if the Defendants' argument regarding a mere three-year statute of limitations is correct (which it is not)[1], the Defendants have continually asserted that they owe and will repay Mr. Robertson under the Patent Purchase Agreement. Prior to the filing of the instant lawsuit, the Defendants began negotiating new payment terms with Mr. Robertson in January 2007. In a document on Intellinetics letterhead entitled "Revised Purchase Agreement," the Defendants state, "We appreciate John [Crist]'s visit as it was the catalyst needed to deal with an issue that required attention." [Pl. Ex. 6.] This document suggests a total repayment of $279,000 and states that Intellinetics is not able "to amortize the debt incurred as a result of the Patent Purchase Agreement." [Pl. Ex. 6.] On January 29, 2007, the amount asserted owed to Mr. Robertson under the Patent Purchase Agreement is between $750,000 and $1,000,000, depending on when repayment is completed. [Pl. Ex. 7.] These efforts to negotiate and renegotiate the payment on the Patent Purchase and Royalty Agreement both confirm that a sum is owed Mr. Robertson and that Mr. Robertson did not declare default to the understanding of either party in 1999.

Finally, the Defendants have continued to benefit from the use of the Patent and the debt owed to Mr. Robertson under the contract. Defendant Intellinetics continued to laud the possession and use of "patented" technologies on its website through at least September 2007. [Depo. A. Michael Chretien, Ex. 8, p. 17.] The only Patent possessed by the Defendants is the one in question in this litigation. [*Id.*] Intellinetics used this language on its website to add credibility to its business and attract clientele. Whatever the Defendants are now trying to say,

---

[1] Plainly, the six-year statute of limitations for "debt founded on any contract," under 13-80-103.5(1)(a) applies here. *Uhl v. Fox*, 498 P.2d 1177 (1972) (holding that damages must be "liquidated and determinable"). Nor is there any requirement that the contract set out a specific sum. *Id.* There is no dispute this debt is founded on a contract. The six-year statute of limitations is appropriate in this matter because the debt is founded on contract and the damages are liquidated and determinable based upon specific calculations under the Patent Purchase and Royalty Agreement. [Complaint Ex. A.]

the trier of fact is fully entitled to infer that the Patent was still providing benefit to the Defendants as late as 2007. Moreover, the Defendants continued to carry the debt to Mr. Robertson on their books through at least 2005. [Pl. Ex. 9.] The Intellinetics balance sheet shows a debt for "Patent Rights due DRobertson" of $558,701. [Pl. Ex. 9.] This debt helped offset profits or incomes for the Defendants. This benefit to the Defendants prohibits them from simultaneously denying liability to Mr. Robertson based upon the evidently incorrect assertion that Mr. Robertson properly and finally declared default under the agreement in 1999 and the statute of limitations has thus run.

The Defendants have unequivocally continued to acknowledge and affirm the debt owed to Mr. Robertson under the Patent Purchase Agreement. In doing so, the Defendants have tolled any statute of limitations and remain liable under the terms of the agreement. Indeed, as shown in the Plaintiff's own motion for partial summary judgment, under the material undisputed facts, Colorado law requires a liability judgment in Plaintiff's favor.

In any event, to the extent the Defendants' assertions deserve any credence, disputes over those material facts are properly determined by a jury. A jury should determine whether the Defendants have continued to avow their liability and willingness to pay Mr. Robertson and benefit from the Patent to present. Partial summary judgment is inappropriate in this context.[2]

*Lack of Patent Ownership*

The Defendants assert that somehow Mr. Robertson never owned the Patent in 1996, the time the Patent Purchase Agreement was executed, because he cannot now find and produce a signed copy of a document assigning the Patent right from III G.I. Ltd. to Mr. Robertson,

---

[2] The Defendants also assert that, because Avatar is not liable, the Defendants Matt and Mike Chretien are not liable under the guarantee. [Def. Mot. p. 10.] There is no other argument presented by the Defendants on this matter. Therefore, Mr. Robertson will rely upon the converse assertion: Avatar is liable under the Patent Purchase and Royalty Agreement, so the Chretiens are liable under the guarantee.

majority shareholder and President of III G.I. Ltd., from June 1996. [Def. Ex. A-6.] In an attempt to bolster this insufficient position, the Defendants submitted an affidavit from one of their own employees stating that he does not recall any vote assigning the Patent to Mr. Robertson nor does he recall signing the shareholder consent. [Def. Ex. A-1.] But this lack of recollection by Mr. Moss proves nothing. And Mr. Robertson's recollection is different. [Depo. Robertson, Ex. 13, pp. 62-64.] The documentary evidence fully supports Mr. Robertson. [Pl. Ex. 10.] The written contract between the parties acknowledges that Mr. Robertson owns the Patent. [Complaint, Ex. A.] The Defendants signed that contract and agreed to its terms. Attempting at this stage to vary the terms of the enforceable contract is barred by the parole evidence rule. Nor did the Defendants raise ownership as a potential issue in their Answer or Amended Answer in this case. Thus, it is inappropriate for the Defendants to infer that Mr. Robertson did not own, and, thereby, could not sell, the Patent to the Defendants. [Def. Mot. p. 13.] While ignoring all other relevant information available on this issue, the Defendants nonetheless assert that they are entitled to partial summary judgment on this claim.

Mr. Robertson produced in discovery various documents proving his ownership of the Patent prior to the sale to the Defendants. On November 25, 1996, the Patent and Trademark Office of the U.S. Department of Commerce recorded an assignment of the Patent in question from III G.I. Ltd. to Mr. Robertson. [Pl. Ex. 10.] Moreover, there is a sworn, notarized statement made by Mr. Robertson on December 19, 1996, showing the Mr. Robertson purchased the Patent in June 1996. [Pl. Ex. 11.] This contemporaneous document fully trumps the lack of memory of an individual who freely admits he was not involved in business details. The shareholder consent document highlighted by the Defendants details the amounts Mr. Robertson spent on III G.I. Ltd. as good and valuable consideration for the Patent. [Def. Ex. A-6.] The

inference that Mr. Robertson was the proper owner of the Patent at the time of the sale rivals the assertion by Mr. Moss that he does not recall any vote or consent to the sale by III G.I. Ltd. and thus renders summary judgment inappropriate.

Summary judgment is a drastic remedy, and such relief should be granted only if the moving party presents materials that demonstrate that no genuine controversy over a material factual issue exists and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339-40 (Colo. 1988). Therefore, the party against whom summary judgment is sought is entitled to <u>every favorable inference</u> that may be drawn from the historical facts. *Kaiser Foundation Health Plan v. Sharp*, 741 P.2d 714, 718 (Colo. 1987). If differing factual inferences may be drawn from the facts, summary judgment cannot be granted. *O'Herron v. State Farm Mutual Automobile Insurance Co.*, 397 P.2d 227, 231 (Colo. 1964); *Sewell v. Public Service Co.*, 832 P.2d 994 (Colo.App.1991).

More importantly, however, is the fact that Mr. Moss's assertion that he does not recall assigning the Patent to Mr. Robertson is not a material fact. Mr. Moss, a minority shareholder of III G.I. Ltd., and his sole recollection of business events from 1996 is not a trustworthy source upon which to base a decision for summary judgment. For example, in his deposition, Mr. Moss stated that he did not remember whether he assigned the Patent to III G.I. Ltd. in 1993. [Ex. 12, Depo. Moss p. 32.] The Patent Office records show that the Patent, designed by Mr. Moss, was indeed assigned to III G.I. Ltd. Furthermore, on the date of his deposition, Mr. Moss stated that he suggested that Mr. Robertson sell the Patent to Avatar. [Depo. Moss p. 49.] Additionally, Mr. Moss testified that in 2006 he went to Mr. Robertson and asked Mr. Robertson to retake the company from Avatar to allow Mr. Moss to run the business from Colorado. [Depo. Moss pp. 57-60.] Finally, Mr. Moss made clear in his deposition that he does not attend to corporate

affairs but merely sticks to developing software. [Depo. Moss p. 108.] For a person who could not remember many things during his deposition and conceded that his knowledge was limited to software development, it is not substantive that he, a minority shareholder, does not recall all of the details involved in selling the Patent from III G.I. Ltd. to Mr. Robertson.

Competing evidence and inferences regarding Mr. Robertson's ownership of the Patent render summary judgment on this issue inappropriate.

*Lack of Intellinetics Liability*

The Defendants' argument that Intellinetics is not liable under the Patent Purchase and Royalty Agreement because Intellinetics is not a party to the original agreement is unpersuasive. [Def. Mot. p. 10.] The original agreement has been negotiated and renegotiated - sometimes by the Chretiens, sometimes by Avatar, and most recently by Intellinetics.[3] [Pl. Ex. 5, 6, 7.] The debt owed to Mr. Robertson is carried on Intellinetics's books. [Pl. Ex. 9.] It is the Intellinetics website that extols the use of patented technologies. [Pl. Ex. 8.] Any assertion that Intellinetics should now be cut out of the liability triangle rings hollow.

It is not entirely clear at this point that Avatar and Intellinetics are truly separate entities, allowing Intellinetics to escape all liability in this matter. The Chretiens own and control both entities, though they consider Avatar a wholly owned subsidiary of Intellinetics. [Depo. A. Michael Chretien, Ex. 8, pp. 6-8.] Facts concerning the amount of control exercised by a corporate parent over its subsidiary are relevant to determine agency. "Such control could be evidence that the subsidiary is the parent's alter ego because the subsidiary has no real separate corporate existence." *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F.Supp.2d 1161, 1166

---

[3] Under the terms of the agreement, the Defendants were permitted to assign the Patent so long as Mr. Robertson agreed and could be paid under the terms of the agreement. [Complaint, Ex. A.] Based upon available evidence, it appears that Avatar assigned the Patent to Intellinetics. *See infra*. Lack of formal written assignment does not undermine the evidence of assignment shown by the record.

(D.Colo. 2003). Such control could be evidence that the one entity is the agent of the other because the parent is conducting the "real" business of the subsidiary. *Id*. In determining whether to disregard the corporate entity, and thus determine that a parent is merely acting as an agent or alter ego of the sub, the court may consider certain factors including:

> (1) the parent corporation owns all or majority of the capital stock of the subsidiary; (2) the parent and subsidiary corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, 'the subsidiary' is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Skidmore, Owings & Merrill v. Canada Life Assurance Co.*, 907 F.2d 1026, 1027 (10th Cir.1990). In this case, the Chretiens own and control both entities; Intellinetics carries the debts of Avatar on its books; and Avatar is inadequately capitalized, thus unable to repay its debt to Mr. Robertson. These factors would weigh in favor of Intellinetics's liability to Mr. Robertson under the Patent Purchase Agreement.

At a minimum, the parties dispute whether Intellinetics has assumed the right to use the Patent from Avatar or acting as an agent of Avatar has benefited from the use of the Patent, a material issue as to Intellinetics's liability in this matter. Partial summary judgment for Intellinetics is inappropriate given these facts.

### *Completed Accounting Renders Claim Moot*

The Defendants assert that the complete accounting has taken place and thus no further action is necessary. [Def. Mot. p. 11.] Mr. Robertson is willing to agree to this position so long

as the Defendants are willing to agree to the debt determined by Mr. Robertson through his agent, Mr. Crist, during the course of this so-called complete accounting. If this is the case, then there is no material issue of fact and the Court may find for the Defendants as to partial summary judgment on the accounting claim.

However, to the extent that the Defendants disagree with the numbers and conclusions reached by Mr. Robertson after this accounting, Mr. Robertson must disagree that a full, fair, and complete accounting has been done in this case. The accounting is necessary to determine the full value of the debts owed to Mr. Robertson. If the debt deduced by Mr. Crist after examining the documents provided by the Defendants are incorrect, then a full accounting remains necessary to resolve this dispute. So far, the parties have not yet reached consensus on the amount due Mr. Robertson. Therefore, a material dispute as to the facts remains and partial summary judgment on this issue is inappropriate.

## **CONCLUSION**

Genuine issues of material fact prevent the Court from entering partial summary judgment in favor of the Defendants. Rival material facts and inferences suggest that a trial is necessary in this matter. The Defendants have not met their burden of showing that material issues of fact do not exist in this matter.

**DATED**: February 20, 2008.

15

Respectfully Submitted,

**SHUGHART THOMSON & KILROY, P.C.**

*Pursuant to C.R.C.P. 121 § 1-26, this document was E-Filed and/or E-Served via CourtLink, and a duly signed copy is on file and available for inspection at the offices of undersigned counsel.*

/s/ Philip W. Bledsoe
Philip W. Bledsoe, No. 33606
Nicole A. Westbrook, No. 34310
***Attorneys for Plaintiff***

2229114.1                                    15

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing document, **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**, was filed electronically on the 20th day of February, 2008, with notice of same being sent via electronic notification by the Court, to:

Randolph S. Dement
7720 E. Belleview Ave., Suite 350
Greenwood Village, Colorado  80111

ATTORNEY FOR DEFENDANTS


                                            /s/ Heather Royall
                                            HEATHER ROYALL